UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CORLISS CONDOMINIUM OWNERS ASSOCIATION,<br><br>        Plaintiff,<br><br>  v.<br><br>NATIONAL SURETY CORPORATION; and THE AMERICAN INSURANCE COMPANY,<br><br>        Defendants. | C21-0200 TSZ<br><br>ORDER |

THIS MATTER comes before the Court on motions for summary judgment filed by plaintiff Corliss Condominium Owners Association ("Corliss"), docket no. 29, and defendants National Surety Corporation ("National Surety") and The American Insurance Company ("TAIC"), docket no. 33. Having reviewed all papers filed in support of, and in opposition to, the motions, the Court finds that oral argument is unnecessary and enters the following Order.

**Background**

The Corliss Building (the "Building") is a three-story multi-family residential building constructed in 1991 and located at 11223 Corliss Avenue North, Seattle, Washington. Am. Compl. at ¶ 2.1 (docket no. 15); Ex. G to Isacke Decl. (docket no. 34-7

ORDER - 1

at 4); Ex. 1 to Gatto Decl. (docket no. 35-1 at 4).  Between 2008 and 2013, either National Surety or TAIC was the insurer as to five "all-risk" property insurance policies issued to Corliss.[1]  Exs. A–E to Isacke Decl. (docket nos. 34-1 – 34-5).

On November 4, 2019, Corliss tendered an insurance claim to the Defendants seeking coverage for the cost of repairing certain water damage.  Ex. B to Houser Decl. (docket no. 30-1).  After receiving Corliss's claim, the Defendants retained YA Engineering Services, LLC ("YAES") to perform an investigation.  Ex. 1 to Gatto Decl. (docket no. 35-1 at 4).  In February 2020, YAES performed a joint intrusive investigation with representatives from J2 Building Consultants ("J2"), a consultant hired by Corliss.  *Id.*  Following the investigation, YAES and J2 issued separate reports documenting the suspected cause of the observed water damage.  *Id.*; Ex. G to Isacke Decl. (docket no. 34-7).  J2 concluded that the hidden water damage was caused primarily by wind-driven rain[2] events combined with certain secondary factors such as "[i]nadequate drainage behind lap siding," "[o]mitted or damaged sealant joints at building penetration and fenestration openings," "[o]mitted or mis-lapped weather resistive barrier at fenestration openings," and "[l]ack of flashing at key locations."  Ex. G to Isacke Decl. (docket no. 34-7 at 6).  YAES determined that construction-related

---

[1] The parties agree that the relevant provisions of the five insurance policies at issue in this action are identical.  *See* Defs.' Mot. for Summ. J. (docket no. 33 at 5 n.1); Houser Decl. at ¶ 8 (docket no. 30); Exs. A–E to Isacke Decl. (docket nos. 34-1 – 34-5).

[2] Wind-driven rain occurs when "wind forces rain drops laterally, which can be deposited onto the building exterior under the right conditions."  Ex. G to Isacke Decl. (docket no. 34-7 at 6).

ORDER - 2

deficiencies and a lack of adequate maintenance were the primary causes of the water intrusion.  *See* Ex. 1 to Gatto Decl. (docket no. 35-1 at 17–18).

In a letter dated January 11, 2021, the Defendants denied Corliss's claim under the policies because, to the extent that any water damage occurred while the policies were in effect, the damage resulted from inadequate or defective construction and maintenance, which are excluded by the policies, leading to a sequence of events that later resulted in water intrusion.  Ex. W to Isacke Decl. (docket no. 34-23 at 7).  On February 17, 2021, Corliss commenced this action.  *See* Compl. (docket no. 1).  Corliss seeks declaratory relief concerning the scope of coverage under the insurance policies and brings claims for breach of contract, insurance bad faith, and violations of the Washington Consumer Protection Act ("CPA") and Insurance Fair Conduct Act ("IFCA").  Am. Compl. at ¶¶ 5.1–9.5 (docket no. 15).

**Discussion**

**1.      Summary Judgment Standard**

The Court shall grant summary judgment if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  A fact is material if it might affect the outcome of the suit under the governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  To survive a motion for summary judgment, the adverse party must present affirmative evidence, which "is to be believed" and from which all "justifiable inferences" are to be favorably drawn.  *Id.* at 255 & 257.  When the

record, however, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, summary judgment is warranted. *See Beard v. Banks*, 548 U.S. 521, 529 (2006) ("Rule 56 'mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" (quoting *Celotex*, 477 U.S. at 322)). Under Washington law, which the parties agree applies to this insurance coverage dispute, "[t]he party asserting coverage bears the burden of proving the loss is a covered occurrence within the policy period" while the "insurer bears the burden of showing an exclusion applies." *See Walla Walla Coll. v. Ohio Cas. Ins. Co.*, 149 Wn. App. 726, 730, 204 P.3d 961 (2009).

**2.     Efficient Proximate Cause**

Interpretation of the language in an insurance policy is a question of law. *See Vision One, LLC v. Phila. Indem. Ins. Co.*, 174 Wn.2d 501, 512, 276 P.3d 300 (2012). In Washington, courts "construe insurance policies as the average person purchasing insurance would, giving the language 'a fair, reasonable, and sensible construction.'" *Id.* (quoting *Key Tronic Corp. v. Aetna (CIGNA) Fire Underwriters Ins. Co.*, 124 Wn.2d 618, 627, 881 P.2d 201 (1994)). "Because 'exclusions from insurance coverage are contrary to the fundamental protective purpose of insurance,' [Washington courts] construe exclusions strictly against the insurer." *Id.* (quoting *State Farm Fire & Cas. Co. v. Ham & Rye LLC*, 142 Wn. App. 6, 13, 174 P.3d 1175 (2007)).

Corliss argues that the Defendants improperly denied its claim under the five all-risk insurance policies because the efficient proximate cause rule mandates coverage. "The efficient proximate cause rule applies only when two or more perils combine in sequence to cause a loss and a covered peril is the predominant or efficient cause of the loss." *Vision One*, 174 Wn.2d at 519. "In such a situation, the efficient proximate cause rule mandates coverage, even if an excluded event appears in the chain of causation that ultimately produces the loss." *Id.* In contrast, when an excluded peril "sets in motion a causal chain that includes covered perils, the efficient proximate cause rule does not mandate exclusion of the loss." *Id.* Although an insurance policy cannot contract around the efficient proximate cause rule, Washington Courts have "left open the possibility that an insurer may draft policy language to deny coverage when an excluded peril initiates an unbroken causal chain."[3] *Id.* at 520.

In this case, the policies provide that the Defendants "will pay for direct physical loss of or damage to Covered Property at the location described in the Declarations caused by or resulting from any Covered Cause of Loss." Ex. A to Isacke Decl. (docket no. 34-1 at 13) ("Policy No. 80894197"); Ex. B to Isacke Decl. (docket no. 34-2 at 12) ("Policy No. 80909805"); Ex. C to Isacke Decl. (docket no. 34-3 at 13) ("Policy No. 80922144"); Ex. D to Isacke Decl. (docket no. 34-4 at 11) ("Policy No. 80932697"); Ex. E to Isacke Decl. (docket no. 34-5 at 11) ("Policy No. 80937482"). As modified by

---

[3] An insurance policy "cannot contract to exclude coverage for excluded perils within a causal chain initially started by a covered peril." *Hill & Stout, PLLC v. Mut. of Enumclaw Ins. Co.*, --- Wn.2d ---, 515 P.3d 525, 536 (Wash. 2022). A policy, however, "can contract to say that coverage is excluded for a causal chain initiated by an excluded peril." *Id.*

ORDER - 5

the "Washington Changes – Excluded Causes of Loss" form, neither National Surety nor TAIC will cover loss or damage caused by an excluded event.  According to the form:

> Loss or damage will be considered to have been caused by an excluded event if the occurrence of that event:
>
> a. Directly and solely results in loss or damage; or
>
> b. *Initiates a sequence of events that results in loss or damage, regardless of the nature of any intermediate or final event in that sequence*.

Policy No. 80894197 (docket no. 34-1 at 11); Policy No. 80909805 (docket no. 34-2 at 10); Policy No. 80922144 (docket no. 34-3 at 11); Policy No. 80932697 (docket no. 34-4 at 9); Policy No. 80937482 (docket no. 34-5 at 9) (emphasis added).  The parties agree that the policies exclude loss or damage caused by faulty, inadequate, or defective design, construction, or maintenance.  *See* Policy No. 80894197 (docket no. 34-1 at 12); Policy No. 80909805 (docket no. 34-2 at 11); Policy No. 80922144 (docket no. 34-3 at 12); Policy No. 80932697 (docket no. 34-4 at 10); Policy No. 80937482 (docket no. 34-5 at 10).  The parties also agree that weather conditions, such as wind-driven rain, are covered under the policies.  *See* Framson Dep. at 85:5–15, Ex. A to Houser Decl. (docket no. 30-1).

The dispositive issue in this action is causation.  The parties dispute whether or not inadequate or defective construction and maintenance initiated the sequence of events that resulted in the water damage.  Typically, the determination of efficient proximate cause is a question of fact; however, "when the facts are undisputed and the inferences therefrom are plain and incapable of reasonable doubt or difference of opinion," the issue

ORDER - 6

of efficient proximate cause "may be a question of law for the court."  *Graham v. Pub. Emps. Mut. Ins. Co.*, 98 Wn.2d 533, 539, 656 P.2d 1077 (1983); *see also Hill & Stout*, 515 P.3d at 535–37 (explaining that the efficient proximate cause of a loss is not an issue of fact if the causal chain is clear).  In this case, the causal chain is not the subject of any difference of opinion.

Kip Gatto from YAES, the Defendants' consultant, determined that Corliss's damage resulted from original construction deficiencies and improper maintenance.  Ex. 1 to Gatto Decl. (docket no. 35-1 at 17); *see also* Gatto Decl. at ¶ 4 (docket no. 35) ("[F]aulty design or construction defects date back to the original construction of the building in 1991.").  Specifically, Gatto noted that "[t]he weather barrier layer behind the [Building's] cladding is discontinuous or missing in various areas, poorly lapped, and not sealed or well-integrated between adjacent components."  Ex. 1 to Gatto Decl. (docket no. 35-1 at 17).  These deficiencies "allowed moisture to migrate behind the cladding in localized areas, primarily at unmaintained joints and transitions."  *Id.*  According to Gatto, "[a] correctly designed, constructed, and maintained building should not be adversely affected by" typical weather events such as wind-driven rain.  *Id.* at 18; Gatto Decl. at ¶ 5 ("[W]ater would not have intruded and contacted building elements behind the weather resistant barrier if the building had been designed [and] constructed properly in accordance with the applicable building codes, and adequately maintained."); Ex. 1 to Gatto Decl. (docket no. 35-1 at 17) ("The cladding at Corliss was not properly detailed or installed to comply with [the then-applicable building code].").

ORDER - 7

Importantly, Jens Johanson from J2, Corliss's consultant, generally agrees with Gatto on these points.  As discussed above, J2 documented numerous deficiencies that date back to the original construction.  Ex. G to Isacke Decl. (docket no. 34-7 at 6); *see also* Johanson Dep. at 199:22–202:8, Ex. F to Isacke Decl. (docket no. 34-6) (agreeing that the deficiencies identified in J2's report have been present since the original construction).  Although Johanson asserts that wind-driven rain is the primary cause of the water damage, *see* Johanson Dep. at 179:23–180:11 & 182:10–183:8, he agrees that water cannot penetrate a building unless a pathway is present, *see* Ex. G to Isacke Decl. (docket no. 34-7 at 12) ("Once water is deposited on the facade of a building, it has the ability to intrude behind a building's exterior cladding system if a pathway is present.  The pathway could be in the form of an opening or construction defect."); Johanson Dep. at 203:3–14.  As he explained during his deposition, Johanson would not expect to find water damage like he found at Corliss if he had designed the weather-resistant system himself.  Johanson Dep. at 205:15–206:13.

Despite Corliss's contention, the causal chain is clear and no factual question remains for the jury to consider.  Corliss does not allege, for example, that wind-driven rain occurred during construction and deposited water on the framing or sheathing in quantities sufficient to initiate the sequence of events that ultimately resulted in the observed water damage.[4]  Likewise, Corliss does not allege, and the evidence does not

---

[4] Any such allegation would not be supported by the record because Johanson concluded that the "damage occurred incrementally and progressively" since the completion of construction in 1991.  Ex. G to Isacke Decl. (docket no. 34-7 at 13).  Johanson's report suggests that wind-driven rain (11 mile-per-hour winds accompanied by at least 0.125 inches of precipitation) is a relatively common event in the Seattle area.

support, that wind-driven rain itself damaged the Building's weather-resistant system, thereby creating pathways for the water to intrude. Rather, Corliss's own expert opines that construction defects created pathways that allowed water to penetrate the weather-resistant barrier and damage underlying building components over a period of time. The Court therefore concludes as a matter of law that inadequate or defective construction and maintenance initiated the sequence of events that resulted in water damage.[5]

### 3.     Ensuing Loss Provision

Corliss argues that, even if the policies' defective construction and maintenance exclusion applies, the exclusion's ensuing loss provision preserves coverage. Generally, "[e]nsuing loss provisions are exceptions to policy exclusions and should not be

---

Using available weather data, Johanson identified 1,871 days between 1991 and 2019 where "measurable wind and rain was combined into a daily event." *Id.*

[5] Because the efficient proximate cause rule applies only when a covered peril is the predominate or efficient cause of the loss, *see Vision One*, 174 Wn.2d at 519, the rule does not mandate coverage in this case because inadequate or defective construction and maintenance *initiated* the causal chain and are excluded under the policies. Corliss contends that this conclusion conflicts with other cases from this District, namely, *Greenlake Condominium Association v. Allstate Insurance Company*, No. C14-1860, 2015 WL 11988945 (W.D. Wash. Dec. 23, 2015) and *Sunwood Condominium Association v. Travelers Casualty Insurance Company of America*, No. C16-1012, 2017 WL 5499809 (W.D. Wash. Nov. 16, 2017). In *Greenlake*, the court determined that the question of efficient proximate cause was best left to a jury. 2015 WL 11988945, at *8. The court, however, was presented with a different insurance policy, which excluded coverage only for damage "caused by" faulty, inadequate, or defective construction, and not for damage that occurred in "a sequence of events" initiated by faulty, inadequate, or defective construction. *Id.* at *7. Unlike *Greenlake*, and despite Corliss's contention, this case presents no factual dispute concerning whether inadequate or defective construction and maintenance initiated the sequence of events that resulted in water damage. Similarly, the policy provisions at issue in *Sunwood* did not include the "inverse" efficient proximate cause language present in this matter. 2017 WL 5499809, at *4 & *9. Further, the Court rejects Corliss's argument that wind-driven rain and inadequate or defective construction and maintenance are "concurrent causes" of its loss and therefore covered under the policies. The undisputed evidence shows that inadequate or defective construction and maintenance initiated the sequence of events that led to the water damage. Although rainwater ultimately penetrated the Building's water-resistant barrier, no witness disputes that construction defects created pathways for the water to enter.

ORDER - 9

interpreted to create coverage." *Wright v. Safeco Ins. Co. of Am.*, 124 Wn. App. 263, 274, 109 P.3d 1 (2004). In this case, the policies exclude coverage for:

> Faulty, inadequate or defective:
>
> (1) Planning, zoning, development, surveying, siting;
>
> (2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
>
> (3) Materials used in repair, construction, renovation or remodeling; or
>
> (4) Maintenance;
>
> of part or all of any property on or off the described premises. *But if loss or damage by a Covered Cause of Loss results, [Defendants] will pay for that resulting loss or damage.*

Policy No. 80894197 (docket no. 34-1 at 12); Policy No. 80909805 (docket no. 34-2 at 11); Policy No. 80922144 (docket no. 34-3 at 12); Policy No. 80932697 (docket no. 34-4 at 10); Policy No. 80937482 (docket no. 34-5 at 10) (emphasis added).

Corliss argues that the ensuing loss provision revives coverage because weather conditions such as wind-driven rain are a covered cause of loss under the policies, Framson Dep. at 85:5–15, and water damage resulted from wind-driven rain. Corliss asks the Court to reject a decision from this District that addresses this exact issue. In *Belmain Place Condominium Owners Association v. American Insurance Company*, No. C19-156, 2019 WL 4190170 (W.D. Wash. Sep. 4, 2019), the court held that an exclusion's ensuing loss provision did not preserve coverage under similar

ORDER - 10

circumstances.[6]  *Id.* at *4.  Notably, the policy language at issue in *Belmain* is the same as the policy language now before this Court.  *Id.* at *1.  As the *Belmain* court recognized, "Washington case law has carved out a sizeable exception permitting insurance companies to draft 'all-risk' policies which, while including 'ensuing loss' provisions, nevertheless allow them to deny coverage where an excluded event initiates a chain of events resulting in an arguably covered loss."  *Id.* at *3.  Further, the court explained in *Belmain* that embracing plaintiff's "theory of interpretation would create a virtual, if not complete, exclusion of the exclusion."  *Id.* at *4 (quoting *TMW Enters. v. Fed. Ins. Co.*, 619 F.3d 574, 576 (6th Cir. 2010)).

This Court agrees with the reasoning in *Belmain* and finds that Corliss's position "has the potential to swallow the exclusions in an all-risk policy whole."  *Id.*  The exclusion's ensuing loss provision does not preserve coverage in this case.  The Court, therefore, concludes, as a matter of law, that the Defendants properly denied Corliss's claim for insurance coverage under the policies because inadequate or defective construction and maintenance, an excluded cause of loss, initiated the sequence of events that resulted in Corliss's damage.

---

[6] In *Belmain*, plaintiff submitted a claim for coverage based on water intrusion damage to a condominium building.  2019 WL 4190170, at *1.  The defendant denied plaintiff's claim, citing numerous construction and maintenance deficiencies which initiated the sequence of events that led to the water damage.  *Id.*  Unlike this case, plaintiff in *Belmain* conceded that defective construction was the efficient proximate cause of the water damage to the building.  *Id.* at *2.

**4.     Corliss's Extracontractual Claims**

In addition to its request for declaratory judgment and its breach of contract claim, Corliss also brings claims for bad faith and violations of the CPA and IFCA. Am. Compl. at ¶¶ 7.1–9.5. These claims are premised on a theory that the Defendants' denial of Corliss's claim for coverage was in breach of the policies. *See id.* Because the Defendants' denial of coverage was proper, they did not act unreasonably in denying coverage. Thus, the Court must dismiss Corliss's bad faith and IFCA claims. *See* RCW 48.30.015 (providing cause of action for insured who is unreasonably denied coverage). Similarly, the Court must also dismiss Corliss's CPA claim because it has not presented evidence that the Defendants violated any applicable claims handling practices or engaged in any unfair or deceptive trade or practice. *See Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 784, 719 P.2d 531 (1986).

**Conclusion**

For the foregoing reasons, the Court ORDERS:

(1)     Corliss's motion for summary judgment, docket no. 29, is DENIED;

(2)     The Defendants properly denied Corliss's claim for insurance coverage under the policies because inadequate or defective construction and maintenance initiated a sequence of events that resulted in the claimed damage. Therefore, the Defendants' motion for summary judgment, docket no. 33, is GRANTED, and Corliss's claims are DISMISSED with prejudice; and

(3)     The Clerk is DIRECTED to enter judgment consistent with this Order, send the Judgment and a copy of this Order to all counsel of record, and CLOSE this case.

IT IS SO ORDERED.

Dated this 23rd day of September, 2022.

                                                   */s/ Thomas S. Zilly*

Thomas S. Zilly
United States District Judge

ORDER - 13